**Wilbert SKIPPER, Jr., Plaintiff**

**v.**

**GIANT FOOD, INC., et al., Defendants**

**No. CIV.A. JFM–02–537.**

United States District Court,
D. Maryland.

Feb. 20, 2002.

JoAnn Patricia Myles, Law Office, Largo, MD, for Plaintiff.

Robert P. Watkins, Julie Hilden, Kumiki Gibson, Kathleen L. Jennings, Kristin E. Adler, Jeffrey M. Smith, Williams and Connolly, Washington, DC, Mark Scott London, London & Mead, Washington, DC, Claudette V. Ferron, Law Office, Washington, DC, for Defendants.

## OPINION

MOTZ, District Judge.

Plaintiff Wilbert Skipper, Jr., a warehouse worker for Giant Food, Inc., has filed suit against Giant[1] alleging racially disparate treatment and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, and adding related state law claims. Defendants now move for summary judgment as to all counts. The motion will be granted.

---

**1.** Skipper has also asserted claims against several of Giant's employees. Those defendants are entitled to summary judgment for the reasons stated in the accompanying opinion in *Carson v. Giant Food, Inc.,* JFM–96–2882. That opinion also addresses Skipper's hostile environment claims under Title VII and section 1981 and state law claims against Giant, in addition to global arguments made by Skipper and other Plaintiffs concerning the early right-to-sue notices issued to them by the Equal Employment Opportunity Commission and the viability of applying the continuing violation doctrine. Thus, this opinion focuses only on Skipper's disparate treatment claims under Title VII and section 1981.

## I.

Skipper began working as a vacation relief worker at Giant's Landover, Maryland, warehouse in 1990, filling in for permanent employees who were on vacation. (Skipper Dep. at 84.) In June of 1991, Giant hired him as a warehouseman for the non-food portion of the warehouse. (*Id.* at 84–85.) He held this position until 1994, when he became a selector in the produce department of the warehouse. (*Id.* at 85.) Skipper is still employed by Giant but has not worked since August 1998, when he sustained an injury and began receiving worker's compensation. (*Id.*)

Skipper, who is African American, alleges that Giant subjected him to racially discriminatory treatment when it disciplined him on several occasions, including on May 18, 1995. On that date, a manager told Skipper's supervisor that he had observed Skipper outside of Skipper's work area. (Def.'s Mem. at 5–6.) Although Skipper contested this allegation, he received a written warning. (*Id.* at 6.) The warning expired six months later without any consequences because Skipper committed no infractions during the warning period. (*Id.* at 7.) Skipper alleges that Giant subjected him to harsher treatment than white workers on this occasion and others. The other instances of alleged disparate treatment that he cites include occasions when Giant managers followed him around the warehouse, subjected him to other charges of being outside his work area, announced his productivity over a loudspeaker, and failed to excuse an absence that he had to take due to a family emergency. (Pl.'s Opp'n at 2–3.)

Skipper filed a charge of discrimination with the Maryland Commission on Human Relations and the Equal Employment Opportunity Commission ("EEOC") on April 2, 1996. (Def.'s Mem. at 7.) He amended the charge on June 7, 1996. (*Id.* at 8.) The EEOC issued Skipper a right-to-sue letter on June 14, 1996, and this suit followed on September 12, 1996. (*Id.*)

## II.

### A.

Skipper alleges that he was subject to discriminatory discipline primarily because he was given a written warning on May 18, 1995, for being outside his work area. Giant argues that this claim is time barred, because it occurred more than 300 days prior to April 2, 1996, the date on which Skipper filed his charge of discrimination with the EEOC. Because this claim is time barred, and because other allegations by Plaintiff of disparate discipline do not constitute adverse employment actions, I will grant Defendant's motion as to the disparate discipline claim.

 Under Title VII, a plaintiff in a "deferral state," a state that has its own law prohibiting discrimination and an agency enforcing the law, has 300 days after the alleged act of discrimination to file a claim with the EEOC. *See Nye v. Roberts*, 159 F.Supp.2d 207, 210 (D.Md. 2001). Since Maryland is a deferral state, Skipper's Title VII claims that occurred within 300 days of April 2, 1996 are timely for purposes of this suit. *See Leskinen v. Utz Quality Foods, Inc.*, 30 F.Supp.2d 530, 533 (D.Md.1998). Three hundred days prior to April 2, 1996, is June 8, 1995. Therefore, incidents occurring prior to June 8, 1995, are not timely for purposes of this Title VII suit. Because Skipper's key incident of disparate discipline, the written warning for being outside his work area, occurred on May 18, 1995, it does not fall within the relevant time period for Title VII consideration.

Plaintiff responds that his disparate discipline claim is not limited to the May 18, 1995, written warning. (Pl.'s Opp'n at 5.)

He urges the court to apply the continuing violation doctrine and to consider claims beyond the scope of the 300–day period. Among those claims, in addition to the May 18, 1995, warning, are the following: an incident in late 1995 when Skipper's manager, Bob Bennett, followed Skipper throughout the warehouse; an incident in which an assistant manager, Mike Franscoya, gave Skipper a warning for being outside his work area and announced Skipper's productivity level over the loudspeaker, which occurred sometime between 1996 and 1998; an incident in 1997 when a Giant executive, Eric Weiss, allegedly falsified an allegation that Skipper was outside his work area; and a six-month written warning Skipper received for having an unexcused absence as a result of a family emergency. (*Id.* at 6–7.)

■ Even assuming that all of the above examples may be considered in support of Plaintiff's disparate discipline claim,[2] they fail to meet a threshold requirement of Title VII: they do not qualify as adverse employment actions. Thus, Plaintiff is unable to make out a prima facie case of disparate discipline, which is necessary for this claim to survive a summary judgment motion.

■ That a plaintiff has suffered an adverse employment action is an "absolute precondition" to suit under the employment discrimination laws. *Tuggle–Owens v. Shalala,* 2000 WL 783071, at \*8 (D.Md. 2000); *see also Porter v. National Conserv, Inc.,* 51 F.Supp.2d 656, 658 (D.Md. 1998), *aff'd* 173 F.3d 425 (4th Cir.1999) (requiring proof of adverse employment action in case that involved, *inter alia,* claims of disparate disciplinary practices). The Fourth Circuit discussed what constitutes an adverse employment action in *Von Gunten v. State of Maryland,* 243 F.3d 858 (4th Cir.2001).[3] An adverse employment action need not be an "ultimate employment decision," such as the termination of an employee from a job, but it must adversely affect "the terms, conditions, or benefits of employment. . . ." *Id.* at 865–66. As the Fourth Circuit noted in *Von Gunten,* "[T]erms, conditions, or benefits of a person's employment do not typically, if ever, include general immunity from the application of basic employment policies or exemption from [an employer's] disciplinary procedures." *Id.* at 869.

■ Plaintiff here has alleged three types of action taken by his employer against him: surveillance, written warnings, and disclosure of his job performance (productivity) to others. He does not allege that, beyond his perception that they were unfair, any of these actions adversely affected a term, condition, or benefit of his employment, and courts have not typically

---

**2.** Plaintiff acknowledged in his deposition that all but the first incident above (involving Bennett) occurred *after* he filed this lawsuit. (Skipper Dep. at 184, 189, 216, 225.) Under Fed.R.Civ.P. 15(d), a plaintiff must move the court for leave to file a supplemental pleading setting forth occurrences which happened after the date of the amended complaint. *See Young–Henderson v. Spartanburg Area Mental Health Ctr.,* 945 F.2d 770, 775 (4th Cir.1991) ("As a general rule, facts accruing after the suit is brought may not be inserted by way of amendment but must be added by supplemental pleading."). Therefore, all alleged discriminatory acts occurring after October 11, 1996, the date the amended complaint was filed, could not be brought as Title VII or § 1981 claims because there has been no supplemental pleading.

**3.** Although *Von Gunten* involved a Title VII retaliation claim, the court explained that the same principles apply to Title VII's general anti-discrimination provision, 42 U.S.C. § 2000e–2. 243 F.3d at 864. The court noted that " 'conformity between the provisions of Title VII is to be preferred.' " *Id.* (*quoting Ross v. Communications Satellite Corp.,* 759 F.2d 355, 366 (4th Cir.1985)).

held such actions to satisfy this requirement. *See, e.g., Von Gunten,* 243 F.3d at 869 (finding that the following of an employee did not constitute an adverse employment action); *Hopkins v. Baltimore Gas & Electric Co.,* 77 F.3d 745, 755 (4th Cir.1996) (finding a formal disciplinary warning for conduct plaintiff denied, which was subsequently removed from his personnel file, not to constitute an adverse employment action); *Porter,* 51 F.Supp.2d at 658 (holding allegation of improper discipline not actionable as an adverse employment action).[4] The warnings did not lead to any further disciplinary action, such as a suspension, nor to any consequence Plaintiff has identified. Similarly, the alleged surveillance and disclosure of his productivity did not lead to discipline of any form, not even a warning.

### B.

 Plaintiff's disparate discipline claim under § 1981, while not subject to the administrative exhaustion requirements of Title VII claims, involves the same elements of a prima facie case. *See Gairola v. Virginia,* 753 F.2d 1281, 1285 (4th Cir. 1985). Because I have found that none of the actions cited by Plaintiff—surveillance, written warnings, and disclosure of his productivity to others—can constitute an adverse employment action as a matter of law, his § 1981 claim also fails.

A separate order is attached.

### ORDER

For the reasons stated in the accompanying Opinion and in the related Opinion in the case of *Carson v. Giant Food, Inc.,* JFM–96–2882, it is, this 20th day of February 2002

ORDERED

1. Defendants' motions for summary judgment against Plaintiff on all causes of action in Plaintiff's complaint are Granted; and

2. Judgment is hereby entered in favor of the Defendants.

4. *Keenan v. American Cast Iron Pipe Co.,* 707 F.2d 1274 (11th Cir.1983), cited by Plaintiff, is not to the contrary. In *Keenan,* the Eleventh Circuit found that a reprimand "that has a meaningful adverse effect on an employee's working conditions" could constitute an adverse employment action under Title VII. *Id.* at 1277. Unlike the written warnings in this case, however, the reprimand in *Keenan* could not be expunged from the employee's file, and the court found that it could affect his ability to secure promotions and credit. *Id.*