**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 03-1683**

---

CHERYL NYE,

Plaintiff - Appellant,

versus

CARL ROBERTS; BOARD OF EDUCATION OF CECIL
COUNTY, MARYLAND,

Defendants - Appellees,

and

NANCY S. GRASMICK, State Superintendent of
Schools; NELSON BOLENDER,

Defendants.

-------------------------------------------------

THE METROPOLITAN WASHINGTON EMPLOYMENT LAWYERS
ASSOCIATION,

Amicus Supporting Appellant.

---

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  J. Frederick Motz, District Judge.  (CA-
99-1797-JFM)

---

Argued:  May 25, 2005                    Decided:  August 5, 2005

---

Before WILLIAMS, MICHAEL, and DUNCAN, Circuit Judges.

---

Affirmed in part, reversed in part, and remanded by unpublished per curiam opinion.

---

**ARGUED:** Nancy G. Black, Laredo, Texas, for Appellant. Laurence Samuel Kaye, Rockville, Maryland, for Amicus Supporting Appellant. Leslie Robert Stellman, HODES, ULMAN, PESSIN & KATZ, P.A., Towson, Maryland, for Appellees. **ON BRIEF:** Neil L. Henrichsen, Joanna R. Onorato, Eric L. Siegel, HENRICHSEN SIEGEL, P.L.L.C., Washington, D.C., for Amicus Supporting Appellant. Eric W. Gunderson, HODES, ULMAN, PESSIN & KATZ, P.A., Towson, Maryland, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Cheryl Nye appeals the district court's order granting summary judgment in favor of her former employer, the Superintendent and Board of Education of Cecil County (the "Board"), on her claims of sexual harassment, retaliation, and constructive discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. We affirm the order granting summary judgment on the sexual harassment and constructive discharge claims. However, we reverse the award of summary judgment as to the retaliation claim and remand for proceedings consistent with this opinion.

I.

In 1981, the Board hired Nye as a school psychologist. Every year, she worked with students at five or six schools within the Cecil County Public School System. At all times relevant to these proceedings, Nye was supervised by Dr. R. Wayne Carmean, the Assistant Superintendent for Student Services and Special Programs. Dr. Carmean determined the schools that Nye would serve during the school year, and Nye typically worked at each school for two days per month.

During the 1993-1994 school year, and again in 1996, Nye alleges that she was sexually harassed by Robert Harris, the principal of Leeds Elementary School ("Leeds"). In August 1996, Nye complained of the harassment to Dr. Carmean and Henry Shaffer,

3

the Director of Human Resources. The Board commenced an investigation and, from August 1996 through February 1997, questioned Nye, Harris, and other school personnel concerning Nye's allegations of sexual harassment. Ultimately, the Board concluded that the allegations could neither be proven nor disproven. Nevertheless, the Board transferred Nye away from Leeds at her request and directed that Harris undergo training on sexual harassment.

On May 20, 1997, Nye filed a complaint with the Office of Civil Rights of the United States Department of Education ("OCR"), regarding her claims of sexual harassment. The OCR referred Nye's complaint to the Equal Employment Opportunity Commission ("EEOC") and also notified the Board of her charge. Subsequently, on October 15, 1997, Nye filed a formal charge of sex discrimination with the EEOC.

According to Nye, the Board took a number of retaliatory actions against her in the sixteen months following her first complaint of sexual harassment. First, Dr. Carmean required Nye to account for her time and whereabouts, something she had never previously been asked to do as an employee of the school system. Second, Dr. Barbara Wheeler, the Associate Superintendent, reacted critically to a presentation Nye made to the Assistant Principals Committee. Third, Nye alleges that she was removed from various committees and special assignments, including the Crisis

4

Intervention Team and the Assistant Principals Committee. Fourth, Dr. Carmean refused to consider Nye for a promotion to the position of psychologist coordinator. Fifth, Dr. Carmean required Nye to defend her decision to release a student from special education services. Nye's remaining allegations of discriminatory retaliation involve this placement decision.

On April 8, 1998, Dr. Carmean scheduled a meeting to question Nye and other colleagues about the student's release. Nye asserts that, because she had received no agenda for the meeting and because she was generally confused about it, she attempted to obtain clarification from Dr. Carmean. When Dr. Carmean was unavailable, Nye sought out another colleague, Melissa Weyl, for information about the meeting. According to Dr. Carmean, Nye approached Weyl in a rude and confrontational manner, which resulted in a disruption to the workplace. On April 15, 1998, on account of this incident, Dr. Carmean issued Nye a formal letter of reprimand.

Significantly, the letter reprimanded Nye for two separate incidents: (1) for inappropriately confronting Melissa Weyl regarding the placement decision, and (2) for notifying the EEOC that another colleague, Leslie Rink, was allegedly sexually harassed by a school principal. Dr. Carmean wrote that:

> In our conference of April 9, 1998 I spoke with you about two issues. The first issue involved your confrontation with Melissa Weyl at Elkton Middle School. It was inappropriate for you to seek out and threaten Ms.

5

Weyl at her work site.  Your contact was upsetting to Ms. Weyl and this must not occur again.  Any contact with Ms. Weyl must be held at a professional level.

The second matter related to your letter in which you alleged that Ms. Leslie Rink, School Psychologist, was subjected to sexual harassment.  By Ms. Rink's affidavit she indicated her anger with you for your letter involving her in allegations against a co-worker which Ms. Rink denies ever occurred.  Ms. Rink was upset by this incident.  You are directed to conduct yourself with Ms. Rink in a professional way.

J.A. 232.

Shortly thereafter, on June 15, 1998, Dr. Carmean completed Nye's annual performance evaluation.  Every year, Nye was evaluated in four areas:  leadership skills, management skills, professional growth, and interpersonal relationships.  Her performance was rated on a scale of 4 ("exemplary"), 3 ("effective"), 2 ("needs improvement"), or 1 ("unsatisfactory").  In this particular evaluation, Nye received several "unsatisfactory" ratings in the area of interpersonal relationships.  However, since 1995, she had never received a rating lower than "effective."

Nye asserts that, on account of these alleged retaliatory actions, she felt vulnerable to termination and, as a result, suffered from severe emotional distress.  Accordingly, on August 28, 1998, Nye resigned her employment with the school system.  She subsequently filed suit, alleging that the Board perpetuated a hostile work environment, retaliated against her for complaining of sexual harassment, and constructively discharged her in violation

6

of Title VII.[1]  After the district court awarded summary judgment to the Board on all of her claims, Nye timely filed the instant appeal.

## II.

We review the district court's order granting summary judgment de novo.  Summary judgment is proper when no issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In particular, the relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

Nye first contends that the district court erred in dismissing her hostile work environment claim against the Board.  To establish a prima facie case of sexual harassment on a hostile work environment theory, a plaintiff must prove that:  (1) she was

---

[1]We agree with the district court's conclusion that, with respect to her constructive discharge claim, Nye presented no evidence that her working conditions were objectively intolerable and thus failed to establish a prima facie claim of constructive discharge.  See Williams v. Giant Food, Inc., 370 F.3d 423, 434 (4th Cir. 2004) (dismissing constructive discharge claim where employee failed to demonstrate that working conditions were objectively intolerable).  The evidence reveals that Nye submitted her letter of resignation two years after the last act of alleged harassment and three months after the last act of alleged retaliation occurred.  By her own account, Nye resigned her employment only after she was able to secure employment elsewhere.

7

harassed because of her sex; (2) the harassment was unwelcome; (3) the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) some reasonable basis exists for imputing liability to the employer. Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998) (establishing four-prong test for hostile work environment claims). In this case, the district court granted summary judgment to the Board on the grounds that no basis existed to impute liability to the Board for the alleged harassment committed by Principal Harris.

We have previously observed that "an employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate . . . authority over the employee." Mikels v. City of Durham, 183 F.3d 323, 331 (4th Cir. 1999) (internal quotes omitted). Of key importance in determining whether the illegal acts of an employee should be imputed to the employer is whether the misconduct was "aided by the agency relation." Id. at 331-32. In Mikels, we explained that:

> Two bright line rules define the boundaries of the root
> principle. Any harassing conduct that culminates in a
> "tangible employment action"[2] against the victim is
> necessarily conduct "aided by the agency relation," since
> it can only be taken by supervisory employees empowered
> by their employers to take such action. In that

[2]"A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus. v. Ellerth, 524 U.S. 742, 761 (1998).

8

circumstance, vicarious liability is absolute, without regard to whether the employer knew, or should have known, or approved of the act, or sought to prevent or stop it.  At the other end . . ., harassment by a fellow-employee having no authority of any kind over the victim never can be found "aided by the agency relation"; as to such employees, the agency relation provides no "aid" for their conduct but workplace proximity, and that does not suffice for the purpose.

Id. at 332 (citations omitted) (footnote supplied).  Ultimately, "[t]he determinant is whether as a practical matter [the] employment relationship to the victim was such as to constitute a continuing threat to her employment conditions that made her vulnerable to and defenseless against the particular conduct in ways that comparable conduct by a mere co-worker would not."  Id. at 333.

Nye contends that Harris possessed sufficient authority to justify imputing liability to the Board since principals generally provide some measure of input into the evaluation of school psychologists.  In support of her contention, Nye proffered evidence that Tony Ligatti, another principal of a school in which she worked, supplied Dr. Carmean with information about his working relationship with Nye, information that subsequently became a part of her performance evaluation.  While we are unwilling to conclude that principals cannot be considered supervisory employees of school psychologists as a general rule, we agree with the district court that a jury could not reasonably find that Harris possessed sufficient authority over Nye to justify imputing liability to the

9

Board in this case. The evidence before us is insufficient to support a finding that Harris, as principal of just one school that Nye visited for two days a month, possessed significant authority over her. By Nye's own account school psychologists reported to representatives of the Board, not principals, and Nye identified Dr. Carmean, not Harris, as her supervisor. Nye fails to present evidence that Harris evaluated her, directed her daily assignments, or otherwise exerted authority over her sufficient to impute liability to the Board. Accordingly, the district court did not err in its conclusion in this regard.

Without a basis to impute liability to the employer, the Board is potentially liable only for any negligence in taking action to stop the alleged harassment. Id. at 332. As the district court observed, however, Nye has presented no evidence that the Board was negligent in addressing her complaints of sexual harassment. The evidence of record suggests that the Board conducted an immediate and thorough investigation into Nye's allegations of harassment. It then took prompt, corrective action, transferring Nye as she requested, and directing Harris to undergo training. Thus, the district court did not err in granting summary judgment to the Board on Nye's hostile work environment claim.

Nye also contends that the district court erred in dismissing her claim that the Board retaliated against her for complaining of sexual harassment in violation of Title VII.  To establish a prima facie case of discriminatory retaliation, a plaintiff must show that:  "(1) she engaged in a protected activity; (2) the employer took an adverse employment action against her; and (3) a causal connection existed between the protected activity and the asserted adverse action."  Von Gunten v. Maryland, 243 F.3d 858, 863 (4th Cir. 2001).  An "adverse employment action" is an action that negatively effects "the terms, conditions, or benefits" of employment.  Munday v. Waste Mgm't. of North America, Inc., 126 F.3d 239, 243 (4th Cir. 1997).  The district court awarded summary judgment to the Board on Nye's retaliation claim on the grounds that each alleged act of retaliation was either (1) not an adverse employment action, or (2) not causally connected to her complaints of sexual harassment.

Although we agree with the district court that the majority of Nye's allegations do not establish a prima facie case of retaliation, we disagree with this conclusion with respect to Dr. Carmean's reprimand letter and Nye's subsequent performance evaluation.  For the following reasons, we believe that the district court erred in granting summary judgment to the Board.

The district court reasoned that a reprimand or downgraded performance evaluation is not an adverse employment action absent some evidence that it was accompanied by some form of "practical consequence[]" concerning the plaintiff's employment.  J.A. 334 (citing Von Gunten, 243 F.3d at 868).  See also Spears v. Missouri Dep't of Corr. & Human Res., 210 F.3d 850, 854 (8th Cir. 2000) ("A poor performance rating does not in itself constitute an adverse employment action because it has no tangible effect upon the recipient's employment . . . .").

In this case, however, the evidence is such that a reasonable jury could find that, in the context of the Board's system of progressive discipline, the reprimand and performance evaluation resulted in a material change in Nye's employment status.  Dr. Carmean described the Board's progressive discipline program as follows:

> Usually, there is a discussion.  Usually there is an asking, account for, getting the information and, based on the information, you might take appropriate disciplinary action which could be a verbal reprimand, which could be a written reprimand or it could very well be, you know, a recommendation for suspension or it could very well be a recommendation to the superintendent for dismissal.

J.A. 188.  Thus, under the Board's system of progressive discipline, Dr. Carmean's formal letter of reprimand and Nye's downgraded performance evaluation thrust Nye further along the discipline track and closer to termination.  As Dr. Carmean himself explained:

12

I had talked to her. I put it in writing earlier. That didn't seem to make a difference. So I thought a stronger evaluation would make a difference.
. . . .
If there had been no change in the behavior of the employee and it continued to progress the way it was progressing, it could ultimate[ly] lead to dismissal.

J.A. 191-93. On this evidence, a jury could reasonably conclude that the reprimand and performance evaluation amounted to a tangible, adverse consequence with respect to Nye's status as an employee of the school system.

Significantly, too, the fact that Dr. Carmean's letter of reprimand expressly chastised Nye for filing a complaint of sexual discrimination is evidence upon which a reasonable jury could find that the Board was retaliating against Nye for engaging in protected activity under Title VII. Indeed, as the district court seemed to observe, the reprimand letter could reasonably be viewed as direct evidence of a retaliatory animus. Specifically, the district court reasoned that:

> With regard to the [letter of reprimand] one could argue that Nye has presented direct evidence of retaliation. The reprimand letter states that Nye was being reprimanded for her "letter in which [she] alleged that Ms. Leslie Rink, School Psychologist, was subjected to sexual harassment." The defendants argue, however, that Nye was not disciplined for communicating with the EEOC, but rather for doing so without Rink's permission and, indeed, without even her awareness that Nye had overheard her mention the harassment.

J.A. 332 n.6. The resolution of a factual issue such as the true motivation behind the reprimand letter was a jury function, and a jury could have reasonably inferred from Dr. Carmean's letter that

13

the Board's proffered explanation was a pretext for discriminatory retaliation.  Accordingly, we hold that, with respect to the reprimand letter and the performance evaluation, evidence of retaliation was sufficiently in material dispute to preclude the award of summary judgment.

AFFIRMED IN PART,
REVERSED IN PART,
AND REMANDED
