Viola M. **JOHNSON**, Plaintiff,

v.

**QUIN RIVERS AGENCY FOR COMMUNITY ACTION, INC., et al., Defendants.**

**No. CIV. A. 3:00CV330.**

United States District Court, E.D. Virginia, Richmond Division.

May 9, 2001.

Bernice Stafford Turner, Chesterfield, VA, for Plaintiffs.

Herbert Fried, Jr., Mark Baron, Laura Graham Fox, LeClair Ryan, Charles Garrison Meyer, III, LeClair, Ryan, P.C., Margaret Alice Browne, Office of the Attorney General, Joan E. Evans, U.S. Attorney's Office, Richmond, VA, James C. Newman, Office of General Counsel, Philadelphia, PA, for Defendants.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, Senior District Judge.

This matter is before the Court on Defendants' motion for summary judgment. Following the Court's Order and Memorandum Opinion dated January 17, 2001, the only remaining claims are Plaintiff's Title VII and ADEA claims of discrimination based on age and race against Quin Rivers Agency for Community Action ("Quin Rivers"). The bases for Defendants' motion for summary judgment are that Plaintiff cannot establish the elements of a *prima facie* case, and that Quin Rivers has legitimate, non-discriminatory reasons for undertaking disciplinary action against Plaintiff.

### I.

Quin Rivers is a private, non-profit organization that provides a range of public services to indigent clients in Charles City, New Kent, King William, Caroline and King and Queen counties. One of the programs offered by Quin Rivers is the Head Start Program. The Head Start Program is a comprehensive development program for preschool-aged children of low-income families. Mary Vail Ware ("Ms.Ware") served as the Executive Director of Quin Rivers from August 13, 1995 through February 16, 2001. Micheile Greenidge ("Ms.Greenidge"), an African-American Hispanic woman, was hired in July 1998 to serve as the Director of the Head Start Program. Ms. Greenidge continues to serve in this capacity. As Director, Ms. Greenidge is responsible for allocating and managing Head Start resources. She also directly supervises her management staff.

In 1992, Plaintiff, Viola M. Johnson ("Ms.Johnson") was hired by Quin Rivers to be the Parent Involvement Coordinator. She was responsible for providing training

and staff support to the Head Start Policy Council ("Policy Council").[1] Plaintiff's duties also included planning general orientation for all Head Start parents and providing technical assistance to staff members who coordinated Parent Committee meetings. Ms. Johnson was part of Ms. Greenidge's management staff and was supervised by Ms. Greenidge. In 1998, Plaintiff became a Family Service Manager as well as Parent Involvement Coordinator. As such, in addition to her parent involvement duties, Ms. Johnson assumed direct responsibility for supervising several Head Start families.

In the spring of 1999, a federal Head Start Review Team reviewed Quin Rivers' compliance with the federal performance standards and cited it for deficiencies. The Review Report indicated that the program was substantially out of compliance with respect to Program Governance. The Review Team also criticized the Head Start Program's performance with respect to Parent Involvement. At a meeting of the Quin Rivers' Board and the Policy Council held on or about May 11, 1999, Ms. Ware and Ms. Greenidge shared the results of the federal review and explained that Quin Rivers had 180 days to come into compliance with the federal performance standards. The discussion included issues concerning the Policy Council and Parent Involvement, and because both of these were Plaintiff's responsibility, she perceived this discussion to be a personal attack. The following day, Plaintiff wrote a letter to Ms. Ware and Ms. Greenidge complaining that she had been discriminated against because of her race and age. Plaintiff sent copies of this letter to the Policy Council and the Quin Rivers Board members. Johnson Dep. at pp. 138–144

& Greenidge Aff. ¶ 4. Ms. Ware responded by challenging Plaintiff's stated belief of discrimination, and suggested that if Plaintiff truly believed she was being discriminated against as a result of the performance review, she should file a charge with the EEOC. Greenidge Aff. ¶¶ 4 & 5.

In May, 1999, Ms. Greenidge placed Plaintiff on probation after repeated performance infractions, including: (1) lateness in arriving and beginning Parent Committee meetings; (2) failing to provide child care services for Head Start parent meetings; (3) failing to attend a scheduled parent orientation meeting in Bowling Green; (4) disparaging the program to school officials; (5) misappropriating her personnel file on May 13, 1999; (6) using confidential files without authorization; and (7) attempting to intercept mail addressed to Ms. Ware and Ms. Greenidge without authorization. Ware Aff. ¶ 4; Greenidge Aff. ¶¶ 5–6. Plaintiff's performance improved while she was on probation and Ms. Greenidge took her off probation in September, 1999.

In November, 1999, after conducting an assessment of program needs, Ms. Greenidge made several decisions resulting in a reallocation of staff. This reallocation resulted in part because Gary Cutler was promoted to the position of Coordinator of the Fatherhood Program. As part of this restructuring, Ms. Greenidge reassigned Plaintiff to the Roxbury office to take over a caseload of forty families previously managed by Gary Cutler and Vickie Holmes. The decision to transfer Plaintiff was influenced by the fact that Plaintiff was familiar with Charles City and New Kent communities where the families resided. Also, Ms. Greenidge had concluded that Plaintiff needed more direct supervi-

---

1. The Policy Council is a voluntary advisory board to the Quin Rivers Board of Directors. The Policy Council is comprised of parents whose children participate in the Head Start program. The council provides parental input and advice to the Board of Directors regarding the operation of the program.

sion. Plaintiff was present at management meetings where these proposed changes were discussed and she did not voice any objection to her reassignment to the Roxbury Office.

After Plaintiff's transfer, she began to have work performance problems again. She neglected her Head Start families and parent and teacher obligations. Ware Aff. ¶ 5; Greenidge Aff. ¶ 10. Specifically, Plaintiff failed to cooperate with Mr. Cutler and Ms. Holmes when the attempted to meet with Plaintiff to review the case files on her Head Start families. Plaintiff also failed to do the following: (1) review the files of her forty Head Start families to assess their needs; (2) meet with the families on a regular basis as required; and (3) make daily visits to the Head Start classrooms to check on Plaintiff's assigned children. Ware Aff. ¶¶ 5–6, 10–11; Cutler Aff. ¶¶ 4–6. Based on these performance problems, Ms. Greenidge recommended Plaintiff's termination. Plaintiff was discharged on July 17, 2000.

On December 18, 1999, and prior to her discharge, Ms. Johnson filed a Charge of Discrimination with the EEOC. Plaintiff complained in her EEOC charge that Quin Rivers discriminated against her based on her race and her age. She also contended that she was "retaliated against for complaining of discrimination."[2] The EEOC subsequently dismissed Plaintiff's charge and, on February 25, 2000, gave Plaintiff notice of her right to sue.

Plaintiff filed her original Complaint in the United States District Court for the Eastern District of Virginia, Richmond Division, on May 25, 2000. Without obtaining leave of Court, she then filed an Amended Complaint on July 13, 2000, and a Second Amended Complaint on September 21, 2000. In her Second Amended Complaint, Plaintiff alleges in pertinent part the following: (1) Plaintiff was discriminated against based on her race when she was placed on probation for an "excessive amount of time." Sec. Amend. Compl., ¶ 128; (2) Plaintiff was demoted on the basis of her age and race. Sec. Amend. Compl., ¶ 11; (3) Plaintiff's discharge was based on her age and her race. Sec. Amend. Compl., ¶ 15; (4) Plaintiff was put on probation and later demoted in retaliation for complaining of discrimination and filing a charge of discrimination with the EEOC. Sec. Amend. Compl., ¶ 80; and (5) Plaintiff was subjected to a racially hostile work environment.[3] Sec.

2. Plaintiff's EEOC charge, in pertinent part, states the following:

During my employment, I have been retaliated against for complaining of discrimination and have been discriminated against in the provision of benefits, training, support and pay and was subject to a hostile working environment due to both my age (44) and race (black). Among other things, I was specifically left out of workshops and meetings, subjected to embarrassing, racially derogatory and humiliating comments, subjected to inconsistent application of policies and procedures and otherwise ostracized. During my employment, I complained about the discrimination, retaliation and harassment. I then was subject to retaliation, including being placed on probation. Despite my grieving the probation decision, the probation not only was upheld but exceeded the stated ninety (90) day period. I subsequently have been demoted.

I believe I have been discriminated against and retaliated against due to my age (44) and race (black) in violation of Title VII of the Civil Rights Act of 1964 as amended, the Age Discrimination in Employment Act, and in violation of Virginia Human Rights Act, Virginia Code Section 2.1–715 et. seq.

3. Plaintiff raised additional claims in her Second Amended Complaint against these defendants as well as other defendants, These claims were dismissed pursuant to the Court's Order and Memorandum Opinion dated January 17, 2001. *See Johnson v. Quin Rivers Agency for Community Action,* 128 F.Supp.2d 332 (E.D.Va.2001).

Amend. Compl., ¶¶ 105–108, 120. These claims are brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and presumably, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et. seq. Defendants have filed a motion for summary judgment with respect to all of these claims.

## II.

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Fed.R.Civ.P. 56. Summary judgment is appropriate where parties do not dispute material facts that might affect the outcome of an action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Under Rule 56, the movant bears the burden of proving the absence of any genuine issues of material fact, and the Court must view the facts and any justifiable and legitimate inferences drawn therefrom in the light most favorable to the non-moving party. *Id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985). Where no genuine issue of material fact exists, the Fourth Circuit has imposed an obligation on the trial judge "to prevent factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987).

Once the movant has met this burden, and a properly supported motion is before the Court, a non-moving party, who will bear the burden of proof at trial on a dispositive issue, may not rest upon mere belief or conjecture, or the allegations and denials contained in his pleadings. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Rather, the non-moving party must set forth specific facts with affidavits, depositions, interrogatories or other evidence to show a genuine issue for trial. *Id.*

Courts must take special care in considering summary judgment in cases involving questions of motive, such as in employment discrimination cases. *Ballinger v. North Carolina Agricultural Extension Service*, 815 F.2d 1001, 1004 (4th Cir.), *cert. denied*, 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987); *see Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364–65 (4th Cir.1985). However, " '[t]he fact that motive is often the critical issue in employment discrimination cases does not mean that summary judgment is *never* an appropriate vehicle for resolution.' " *Ballinger*, 815 F.2d at 1005 (quoting *International Woodworkers of America v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1272 (4th Cir.1981)) (emphasis in original). Where a plaintiff fails to set forth either a prima facie case of discrimination or a "genuine factual dispute over the employer's legitimate non-discriminatory explanation," a defendant may prevail on summary judgment. *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1316–17 (4th Cir. 1993).

## III.

In her Second Amended Complaint, Plaintiff alleges for the first time that she was discharged by Quin Rivers on July 17, 2000, and that her discharge was "motivated by Defendants [sic] intent to discriminate against Plaintiff on the basis of her age, race, ..." Sec. Amend. Compl. ¶¶ 3, 15. The Court need not address the merits of Plaintiff's discriminatory discharge

claim, however, because Plaintiff failed to exhaust her administrative remedies as to this portion of her Complaint. Claims set forth in a Title VII complaint "are cognizable so long as they are like or reasonably related to the allegations of the [EEOC] charge and grow out of such allegations." *Nicol v. Imagematrix, Inc.,* 767 F.Supp. 744, 752 (E.D.Va.1991) (citation omitted). To allow a complaint to encompass allegations outside of the ambit of the EEOC charge deprives the charged party of the notice of the charges, which is one of the reasons why plaintiffs must exhaust their remedies by filing a timely charge with the EEOC. In determining the valid scope of a civil action, the critical element is the narrative statement in the charge. *Id.* at 752. Where a plaintiff's subsequent action complains of a type of discrimination never mentioned in the charge, jurisdiction over the claim does not exist. *Id.* at 744.

■ In this case, Plaintiff's EEOC charge makes no mention of discrimination based on gender, but alleges only that she was discriminated against based on her race and age. The charge also alleges that Plaintiff was retaliated against because she complained of discrimination. The EEOC charge is silent, however, with respect to any allegation that Plaintiff was dis-

charged, or that such discharge was discriminatory. As such, Ms. Johnson's claim that her discharge by Quin Rivers was discriminatory is dismissed with prejudice.[4]

## IV.

■ Under Title VII, the plaintiff bears the initial burden of proving a *prima facie* case of discrimination by raising an inference that the defendant acted with discriminatory intent. *Wileman v. Frank,* 979 F.2d 30, 33 (4th Cir.1992). This can be done either through direct evidence of discriminatory intent, or by using the four-part scheme set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which provides an inference of discriminatory intent. In this case, that would require Ms. Johnson to show: (1) that she is a member of a protected class; (2) that she was qualified for her job and her job performance was satisfactory; (3) she suffered an adverse employment action; and (4) similarly situated employees not in the protected class received more favorable treatment. *Id.; St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–10, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Carter v.*

---

4. Based on this finding, it is not necessary for the Court to address the merits of Plaintiff's claim of discriminatory discharge. In an abundance of caution, however, the Court has reviewed the record to determine whether Plaintiff has satisfied the *prima facie* case of discriminatory discharge under either Title VII or the ADEA. Where a complaint specifically alleges discriminatory discharge in violation of Title VII. Plaintiff must show the following elements: (1) she is a member of the protected class; (2) she was qualified for the job and met the employer's legitimate expectations; (3) she was discharged despite her qualifications and performance; and (4) her job remained open to similarly qualified applicants. The first three elements in ADEA discriminatory discharge claims are the same as under Title VII. However, the fourth ele-

ment generally differs in that under the ADEA, it requires the plaintiff to show that following her discharge, she was replaced by someone with comparable qualifications outside the protected class. *Causey v. Balog,* 162 F.3d 795, 802 (1998) (citation omitted); *see, e.g., Karpel v. Inova Health System Services,* 134 F.3d 1222, 1228 (4th Cir.1998). Based on the record, the Court finds that Plaintiff has failed to satisfy the second element, that she met Quin Rivers' legitimate expectations. Indeed, the evidence overwhelmingly establishes that Plaintiff did not adequately perform her job duties. As such, even if Plaintiff had exhausted her administrative remedies with respect to her claim of discriminatory discharge, she has failed to establish a *prima facie* case.

*Ball,* 33 F.3d 450, 459 (4th Cir.1994). The same elements are necessary to establish a *prima facie* case of discrimination under the ADEA. *See Goldberg v. B. Green & Co.,* 836 F.2d 845, 847–48.

The Fourth Circuit has adopted an alternative set of factors that are specifically tailored to claims of discriminatory discharge. The elements in this alternative scheme are proof that (1) the employee belongs to a racial minority or other protected group; (2) she was qualified for her job and performed her job satisfactorily; (3) in spite of her job qualifications and job performance, her employer discharged her; and (4) her job remained open to similarly qualified applicants after her dismissal. *See Karpel v. Inova Health Sys. Serv.,* 134 F.3d 1222, 1228 (4th Cir.1998) (quoting *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 455 (4th Cir.1989)).

**A.**

Plaintiff alleges that she was placed on probation and demoted, both of which constituted discrimination based on age and/or race. However, she has failed to satisfy her burden with respect to either of these. Because Plaintiff has no direct evidence that Ms. Greenidge's decision to place Plaintiff on probation or to transfer her to the Roxbury office was due to Plaintiff's race or age, Plaintiff must rely on the *McDonnell–Douglas* proof scheme. Under that scheme, Plaintiff must satisfy each of the elements set forth above.

With respect to Plaintiff's demotion claim, it is clear that Plaintiff has failed to satisfy the third element, that she suffered an adverse employment action. Plaintiff has presented no evidence that her reassignment to the Roxbury office constituted a demotion. Rather, all of the evidence indicates otherwise. While Plaintiff's

duties were somewhat different after the transfer, Plaintiff received no reduction in her salary or benefits; in fact, she actually received a salary increase of two hundred and fifty dollars after her reassignment to Roxbury. Plaintiff admits that her title of Parent Involvement Coordinator/Family Services Manager remained the same, and Plaintiff remained a part of Ms. Greenidge's management staff.

Although the Fourth Circuit does not limit "adverse employment actions" to only ultimate employment actions such as hiring and firing, the alleged adverse action must rise to a level that shows that the terms, conditions, or benefits of plaintiff's employment were adversely affected. *See Munday v. Waste Mgmt. of North America, Inc.,* 126 F.3d 239, 242–43 (4th Cir. 1997). Given the lack of evidence that the terms, conditions, or benefits of Plaintiff's employment were adversely affected, the Court finds that no adverse employment action was taken against Plaintiff. *See, e.g., Velez v. UUNET Technologies, Inc.,* 1999 WL 33229627 (E.D.Va.1999), *aff'd* 217 F.3d 843 (4th Cir.2000). As such, Plaintiff has failed to satisfy her burden with respect to her demotion claim.

■ Next, Ms. Johnson claims that Ms. Greenidge's decision to place Plaintiff on probation was based on discriminatory motives related to Plaintiff's race, in violation of Title VII. However, Plaintiff has failed to satisfy the fourth element, for she has pointed to no employee who neglected her job duties as Plaintiff did, and who was treated more favorably than Plaintiff.[5]

**B.**

Even if Plaintiff had established the elements of a *prima facie* case of discrimina-

---

5. It is arguable whether Plaintiff's probationary status even rises to the level of an adverse employment action. However, the Court need not address this issue based on the finding that Plaintiff has failed to satisfy the last element of a *prima facie* case.

tion with respect to either her discharge, probation, or alleged demotion, she has not yet defeated Defendants' motion for summary judgment. Once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to demonstrate a nondiscriminatory reason for the challenged employment action. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. Once the defendant offers a nondiscriminatory explanation, the burden shifts back to the plaintiff to offer probative evidence that the proffered explanation is merely a pretext for discrimination. *Id.* at 802–04, 93 S.Ct. 1817. In order to satisfy this burden, a plaintiff must show by admissible evidence that the proffered rationale was false and that discrimination was the true reason the adverse employment action was taken. *St. Mary's*, 509 U.S. at 525, 113 S.Ct. 2742; *Jiminez v. Mary Washington College*, 57 F.3d 369 (4th Cir.1995).

■ In this case, Defendants have provided thorough explanations for each of the employment actions challenged by Plaintiff as motivated by discriminatory animus. For example, while Plaintiff claims that Ms. Greenidge's decision to place Plaintiff on probation was motivated by Plaintiff's race, Ms. Greenidge has detailed numerous performance infractions committed by Plaintiff which served as the basis for Ms. Greenidge's decision to place Plaintiff on probation. Plaintiff missed Parent Committee meetings, was tardy in arriving and beginning these meetings, failed to provide child care services for Head Start parent meetings, failed to meet with each of her assigned Head Start families and advise them of available resources, failed to ensure that each child was enrolled for medical care and other available services, failed to meet with parents and teachers of Head Start children on a regular basis, failed to properly train the Head Start Policy Council, misappropriated her personnel file in violation of Article X of Quin Rivers' Policies and Procedures, used confidential files without authorization and in violation of Article XIII of the Personnel Policy, and attempted to intercept certified mail addressed to Ms. Greenidge and Ms. Ware, without authorization and in violation of Article XIII of Quin Rivers' Personnel Policies and Procedures. Greenidge Aff. ¶ 3, 6.

Although Plaintiff's job performance improved while she was on probation, resulting in Ms. Greenidge's decision to remove Plaintiff from probation, Plaintiff again began to neglect her job duties after she was transferred to Roxbury, and these performance infractions ultimately led to Plaintiff's discharge. As previously stated, Plaintiff failed to notify the Board Representative for the Policy Council about a Policy Council meeting, failed to provide an accurate and updated list of the Policy Council representatives as well as adequate training to Policy Council Members, failed to review the files of her Head Start families and failed to make the requisite visits to her assigned families, disrupted classrooms during school visits, failed to link her families to needed services, failed to plan and implement parent orientation and training sessions and failed to regularly report on all monthly parent activities pursuant to her position as the Family Service Manager and Parent Involvement Coordinator. Greenidge Aff. ¶ 10. Despite Ms. Greenidge's attempt to correct the situation by meeting with Plaintiff regarding her poor job performance and counseling her as to how to effectively perform her job, Plaintiff's poor job performance continued. Ms. Greenidge recommended that Plaintiff be terminated and this recommendation was adopted.

■ Finally, Defendants have detailed the reasons and circumstances leading up to Ms. Greenidge's decision to reassign Plaintiff to the Roxbury Office. First, this

transfer was not a demotion. Next, Defendants' articulated reasons for the transfer are legitimate: (1) there was a need to provide Head Start services to forty families in Charles City and New Kent as a result of one employee's promotion to Fatherhood Program Coordinator and another employee's reassignment. Given her familiarity with these communities and her experience as a Family Service Manager, Plaintiff was a logical choice for the transfer.

Plaintiff may disagree as to whether her job performance was inadequate such that she deserved to be placed on probation or terminated. She may also disagree as to whether her transfer to Roxbury was a demotion, and whether the transfer was based on legitimate or illegitimate reasons. However, she has proffered no evidence that Ms. Greenidge's articulated reasons are pretextual. Thus, even if Plaintiff had satisfied her *prima facie* case, which she most decidedly has not, she has not demonstrated that Defendants' articulated reasons for placing Plaintiff on probation and transferring her to Roxbury are pretextual.

## V.

 Plaintiff also claims that she was placed in probation in retaliation for complaining about age and race discrimination. Also, Plaintiff claims that she was "demoted" not only because of her age and race, but also in retaliation for complaining about discrimination and filing a charge of discrimination with the EEOC. To establish a *prima facie* case of retaliation in the Fourth Circuit, a plaintiff must show three elements: (1) that she engaged in protect-

ed activity; (2) that her employer took a tangible adverse employment action against her; and (3) that a causal connection existed between the protected activity and the asserted adverse employment action. *Von Gunten v. Maryland,* 243 F.3d 858, 863 (4th Cir.2001). If a plaintiff establishes a *prima facie* case, the defendant can rebut it by articulating a nondiscriminatory reason for the adverse action. Then the burden shifts against to the plaintiff to prove that the defendant's proffered explanation is pretextual. *Carter v. Ball,* 33 F.3d 450, 460 (4th Cir.1994) (citation omitted).

As previously discussed, the Court finds that Plaintiff's alleged demotion was not, in fact, a demotion, but merely a transfer. As such, Plaintiff fails to satisfy a *prima facie* case with respect to her claim that she was demoted in retaliation for her complaining of discrimination. Moreover, Plaintiff's claim of retaliation fails for another reason. Plaintiff was placed on probation in May, 1999, and she was transferred to the Roxbury office in November 1999. Plaintiff did not file her charge of discrimination with the EEOC until December 18, 1999. Therefore, because her probation and transfer preceded the filing of a charge of discrimination, it is impossible that Plaintiff was placed on probation and transferred in retaliation for her filing an EEOC charge.[6]

## VI.

 Finally, Plaintiff complains that she was subject to a racially hostile work environment. In order to establish this claim, Plaintiff must establish four ele-

---

**6.** To the extent that Plaintiff claims that her probation and transfer were in retaliation for Plaintiff's May 12, 1999 letter to Ms. Ware and Ms. Greenidge complaining of discrimination, the retaliation claim still fails. First, the transfer was not a demotion. Second, regardless of whether Plaintiff has satisfied the *prima facie* case with respect to the alleged "retaliatory probation," this claim clearly fails on the basis that Quin Rivers has documented legitimate, non-retaliatory reasons for placing Plaintiff on probation, and Plaintiff has no evidence that such reasons are pretextual.

ments: (1) unwelcome conduct; (2) based on Plaintiff's race; (3) sufficiently pervasive and severe as to alter the conditions of employment and create a hostile work environment; and (4) some basis for imputing liability to Quin Rivers. *See Causey v. Balog,* 162 F.3d 795, 801 (4th Cir.1998) (citation omitted). The existence of a hostile environment cannot be predicated on isolated acts or trivial incidents. *Carter,* 33 F.3d at 461. Furthermore, Plaintiff must demonstrate that Quin Rivers had actual or constructive knowledge of the hostile working environment. *Id.*

Plaintiff has failed to meet her burden with respect to this claim. Plaintiff identified four isolated statements or phrases when asked to identify any racially hostile remarks made in her presence. The first statement was made by Shawn Jones ("Ms.Jones") in reference to Plaintiff's job. Plaintiff stated: "We were having a discussion about a family, some families or something and I recall [Ms. Jones] saying I want to help you as best as I can. I want to help you. And then she says, 'It's not about your dark skin or the texture of your hair.'" Johnson Dep. at p. 190. Plaintiff later acknowledged that she never complained to anyone about the statement made by Ms. Jones, despite the fact that she perceived it as insulting. Johnson Dep. at pp. 194–95. As insulted as Plaintiff may have been, however, there is no basis for concluding that this statement was racially derogatory. The statement certainly cannot support a claim of a racially hostile work environment.

Next, Plaintiff identified a second comment by Ms. Jones to the effect that Ms. Jones had been "Violafied," meaning she had been ostracized. Johnson Dep. at p. 192. This statement, however, appears to have no racial connotation, and cannot support Plaintiff's claim. The other two statements identified by Plaintiff as contributing to her hostile environment claim are

attributed to Ms. Ware. The following testimony is from Plaintiff's deposition:

A. I was talking—I was in Roxbury office and I was talking to some staff people .... I said. I've been moved and I don't have a desk. And Mary said you could put your desk by the toilet or in it or near it, something to that effect.

Q. Ms. Johnson, in paragraph 107 of the Complaint you indicate that Mary Ware stated "Viola Johnson belongs in someone's kitchen because that's all she's good at." Do you consider that to be a racial slur?

A. Yes, I do.

Johnson Dep. at pp. 212–214. Even if these statements are true, however, neither of them are inherently racially derogatory. Rather, one could infer from hearing these statements that Ms. Ware considered Plaintiff to be a poor worker or that Ms. Ware just did not like Plaintiff. Again, while the statements may not have been nice or well-intended, they are insufficient to support a claim of a racially hostile work environment, either standing alone or combined. Only the first comment even makes a reference to race. Also, Plaintiff concedes that she never complained to Ms. Ware with respect to the statement about Plaintiff belonging in a kitchen. Based on these findings, Plaintiff's claim of hostile work environment must fail.

## VII.

For the foregoing reasons, Defendants' motion for summary judgment is granted with respect to all of Plaintiff's remaining claims. As such, these claims are dismissed with prejudice.

An appropriate Order shall issue.

## *ORDER*

This matter is before the Court on Defendants' motion for summary judgment.

668

For the reasons stated in the accompanying Memorandum Opinion, this motion is GRANTED. Plaintiff's claims are DISMISSED WITH PREJUDICE.

It is so ORDERED.

Let the Clerk send a copy of this Order to all counsel of record.