Alphonzo **TAYLOR**, Plaintiff,

v.

Commonwealth of **VIRGINIA DE-PARTMENT OF CORRECTIONS**, Defendant.

Civ. A. No. 3:00CV00871.

United States District Court,
E.D. Virginia,
Richmond Division.

Dec. 17, 2001.

---

Harrison B. Wilson, III, for plaintiff.

Ondray T. Harris, Office of the Attorney General, for defendant.

## MEMORANDUM OPINION

DOHNAL, United States Magistrate Judge.

This matter is before the Court by consent of the parties (28 U.S.C. § 636(c)(1)) on the Defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56. The Plaintiff, an African–American male employed by the Defendant, alleges that he was discriminated against by being subjected to a hostile work environment fomented by the racial animus of his supervisor and that he was retaliated against by an involuntary job transfer for having engaged in the protected activity of pursuing an authorized grievance procedure involving claims of racial discrimination.[1] For the reasons set forth herein, the Defendant's motion is GRANTED.

### Standard of Review

Summary judgment is only to be granted when there is no genuine dispute as to any issue of material fact when all justifiable inferences are drawn in favor of the non-moving party and the movant is entitled to judgment as a matter of law. *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, unsupported conclusory allegations by the non-moving party are not sufficient to create a genuine dispute of material fact so

as to withstand the granting of relief. *Celotex Corp. v. Catrett,* 477 U.S. at 327, 106 S.Ct. 2548 (White, J., concurring). In essence, the Court must decide if the evidence when viewed in the light most favorable to the non-moving party "presents a sufficient disagreement to require submission to the [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 251–252, 106 S.Ct. 2505.

### Undisputed Material Facts and Justifiable Inferences

The Court deems the following to be the relevant undisputed facts and permissible inferences on which the resolution of the pending motions must be based:

1. Plaintiff, an African–American male, has been employed by the Defendant since 1978. (Am.Compl.¶ 1).

2. The Plaintiff alleges that only his immediate supervisor, Mr. Thomas Neumayer (Neumayer), behaved in such a manner as to create a hostile work environment for the Plaintiff. (Am. Compl. ¶¶ 2, 4, 5; Mem. in Supp. of Pl.'s Resp. to Def.'s Mot. for Summ. J. (Pl.'s Mem.) (Taylor Aff.)).[2]

3. The Plaintiff alleges that Neumayer made the following statements to the Plaintiff or in the Plaintiff's presence over a period of the one year and a month that he was under his supervision: that the Plaintiff is a "big, black dark African–American with a loud voice

---

1. The Amended Complaint contains the statement that "[t]he retaliation aspect of this case will be resolved in a separate legal matter." (Am.Compl.¶ 3). At oral argument on the Defendant's motion, counsel for the Plaintiff stated in response to inquiry by the Court that the comment resulted from some type of typographical error and that the claim of retaliation is, in fact, asserted in this action. The Court will therefore consider the statement in

the pleading as withdrawn and otherwise meaningless.

2. Although Mr. Neumayer denies he made certain of the statements attributed to him and that a hostile work environment existed as concerns the Plaintiff, the Plaintiff's nonconclusory factual allegations must be considered as true for purposes of resolving the motion.

[whose appearance] scared white women and intimidated white men"; [3] that the Plaintiff is a diabetic m-f (expletive); that "Adolph Hitler had some good ideas but he might have gone too far"; that he (Neumayer) couldn't understand why he couldn't "call blacks 'niggers' like blacks refer to each other"; that an African–American female co-worker was a "bird brain" but because she was female and—like the Plaintiff—Black, she was a member of a "protected class" and couldn't be fired; that "Blacks have too many special rights"; that Neumayer referred to the Plaintiff as "Bubba" on repeated occasions; that Neumayer told the Plaintiff "he liked to be around his own kind"; and that Neumayer told racist jokes in the workplace. (Pl.'s Mem. (Taylor Aff. ¶¶ 1, 2, 4, 6, 7, 9, 10, 26, 27 30); Court Ex. 1 (Taylor Dep.) at 28, 35–37, 39).

4. The Plaintiff also asserts he felt discriminated against in the workplace because of additional circumstances that included: Neumayer told the Plaintiff soon after Neumayer began supervising the Plaintiff that a poll of the Plaintiff's subordinates revealed they did not like him and that he would therefore not "last" at the facility; the Plaintiff's workload and duties were reduced soon after he came under Neumayer's supervision and after his subsequent transfer to a smaller facility; Neumayer informed supervisors at the facility and Plaintiff's counsel that the Plaintiff had lied about requesting leave; Neumayer failed to participate in mediation sessions regarding racial/cultural issues related to the Plaintiff's employment; Neumayer sent the Plaintiff a directive regarding "job expectation" that constituted a breach of the confidential mediation effort; Neumayer required the Plaintiff to repeatedly revise a staff evaluation without just reason; Neumayer excluded and otherwise isolated the Plaintiff from administrative decisions and meetings; and Neumayer brought an unsuccessful defamation action against the Plaintiff in state court in regard to which the Defendant refused to provide the Plaintiff with representation; disciplinary actions were taken against Plaintiff after his transfer to another facility that were ultimately withdrawn but only after the Plaintiff was temporarily reassigned to yet another facility; and the supervisor (Estep) who initiated the disciplinary actions against the Plaintiff that were ultimately withdrawn was not disciplined for having pursued the ungrounded charges. (Pl.'s Mem. (Taylor Aff.); Encl. 7; Court Ex. 1 (Taylor Dep.) at 4–5, 10–13, 26, 28–29, 42–50, 60; Court Ex. 3 (Rogers Dep.) at 16–17).

5. The Plaintiff submitted a related grievance dated May 21, 1999, in which he identified the issue as "Discrimination and Retaliation by the Asst. Warden at PRCC [Powhatan Reception and Classification Center]," later adding the allegation: "and being transferred to PCU [Pocahontas Correctional Unit] for filing this grievance." (Pl.'s Memo., Ex. 7).[4]

---

3. The Plaintiff, by his own admission, is six feet tall and weighs 255 pounds. (Court Ex. 1 (Taylor Dep.) at 55).

4. The Plaintiff's grievance was denied on all administrative levels and ultimately dismissed on appeal in state court. (Pl.'s Mem., Ex. 9 (Memo. of Angelone, June 27, 2000), Court Ex. 2 (Neumayer Dep.) at 36–37). However, any administrative resolution of the claims is not relevant in resolving this matter and therefore it is not included as a specific finding of the Court.

6. The only factual allegation in the grievance form that expressly alleges racial discrimination is the statement: "Mr. Neumayer stated to me in his office that because I was a big tall dark skin African American, white wonmen [sic] and some white men were intimidated by my appearance. I was offended and sort [sic] counsel." (Pl.'s Mem., Ex. 7).

7. Regional Director William Rogers (Rogers) transferred the Plaintiff to a smaller field unit after the Plaintiff filed his grievance. (Court Ex. 1 (Taylor Dep.) at 18–20; Court Ex. 3 (Rogers Dep.) at 6–7).

8. Although Rogers was aware that the Plaintiff had filed a grievance and had access to the form (Form A) that he had submitted when he decided to transfer the Plaintiff, Rogers did not know of the statements and actions attributed to Neumayer by the Plaintiff with the exception of the "big black dark African–American" statement that was set forth on the grievance form and confirmed by the Plaintiff to Rogers upon the latter's inquiry. (Court Ex. 3 (Rogers Dep.) at 7, 11–13, 19, 26, 30, 47).

9. Neumayer did not have the authority to transfer the Plaintiff and did not request that he be transferred. (Court Ex. 1 (Taylor Dep.) at 19–20; Court Ex. 3 (Rogers Dep.) at 32).

10. The Plaintiff had fewer subordinates to supervise following his transfer and less administrative duties. (Court Ex. 1 (Taylor Dep.) at 22–23).

11. The Plaintiff maintained the same position he had held previously after his transfer and did not suffer any decrease in salary income as a result of the transfer. (Court Ex. 1 (Taylor Dep.) at 22–23, 26–27, Def.'s Mem., Encl. VI) ("Currently, I hold the same position").[5]

12. The Plaintiff admits by failing to respond to the Defendant's Request for Admissions in a timely fashion[6] that the Plaintiff had continuous difficulty with his subordinates because of his management style (including a temper), and that such circumstances were the reason for his transfer as opposed to any racial-

---

5. The Plaintiff applied for a position at the unit to which he was transferred both before and following his transfer, but it was a different position (Institutional Corrections Manager) and therefore that fact, though undisputed, has no relevance to the issues in this matter. (Def.'s Mem., Encl. V; Court Ex. 1 (Taylor Dep.) at 52–54).

6. The Plaintiff, by counsel, seeks leave to file his responses to the Defendant's Request for Admissions some twenty-eight days late. (Mem. in Supp. of Def.'s Mot. to Strike Pl.'s Evidence, ¶¶ 9–12). No justification is offered other than counsel's neglect and the need for adjudication on the merits of the Plaintiff's claims by the exercise of the Court's presumed discretion in the absence of any demonstrated prejudice to the Defendant. The Court finds Plaintiff counsel's explanations and arguments to be lacking given the substantial time lapse and the inadequacy of the explanation for the delay, whether or not the

Defendant can claim prejudice. *See Smith v. Alice Amanda Inc.*, 39 Fed. R. Serv.3d 484, 1997 WL 896612 (E.D.Va.1997) (Rule 36(a) of the Federal Rules of Civil Procedure is strictly honored and "it would be a potential abuse of discretion for a district court to refuse admissions unless the late response was 'minimal in time' and a legitimate excuse for tardiness existed") citing *Nguyen v. CNA Corp.*, 44 F.3d 234, 242–43 (4th Cir.1995) (district court did not abuse its discretion in refusing to consider requests for admission as admitted where response was only one day late and late filing was due to weather issues). Such a conclusion is warranted especially in light of the clear mandate of the Rule and consistent case precedent requiring the Court to consider the unanswered assertions as admitted even if they are clearly objectionable. *See id.* The Plaintiff's motion for leave to have the Court consider his answers to the Defendant's Request for Admissions is therefore DENIED.

ly-motivated discrimination. (Def.'s Mem., Encl. IV at ¶¶ 4, 13–14).[7]

## Analysis

Plaintiff alleges he was subjected to a racially-hostile work environment and that he was transferred with adverse employment consequences in retaliation for complaining about the racial discrimination he suffered.

### Hostile Work Environment

■ A plaintiff may establish a claim under Title VII, 42 U.S.C. § 2000e–2(a)(1), where harassment creates a hostile work environment that amounts to discrimination in the way it affects an employee's terms, conditions or privileges of employment. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 73, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). To succeed in a hostile work environment action under the circumstances of this case, the Plaintiff must show that the statements and activities that he complains about were (1) unwelcome; (2) based on race; and (3) sufficiently severe or pervasive to constitute an illegally discriminatory and abusive workplace. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183–184 (4th Cir.2001).

■■ Title VII is violated when the workplace is permeated with discriminatory behavior that is sufficiently severe or pervasive to create a hostile or abusive working environment under both a reasonable person objective standard as well as a subjective standard where the victim perceives the environment to be abusive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). To determine whether such a hostile environment existed, a court must look to the totality of the circumstances includ-ing the frequency of the conduct, its severity, whether there were any physical threats, humiliation, or a mere offensive utterance, and whether such actions reasonably interfered with plaintiff's performance. *Id.*

■ Certainly, the various statements attributed to Neumayer were unwelcomed by the Plaintiff if they were in fact made, as must be assumed for purposes of resolving the pending motion. In addition, at least several of the statements, if not also part of the context in which they were made, were racially-motivated or otherwise suggest racial elements. At the same time, some of the alleged comments and circumstances are race-neutral on their face and more in the nature of interoffice banter or activity between individuals who obviously did not like each other regardless of race issues. For example, the reference to "Bubba" as a racially-derogatory term as applied to the African–American community eludes the Court and any salutation of the Plaintiff with reference to a medical condition (diabetes) of his by use of a modifying expletive is clearly tasteless and demeaning, but not necessarily racially-tinged. (Findings ¶ 3). Likewise, at least some of the contextual actions that the Plaintiff asserts were racially-motivated are objectively race-neutral. (Findings ¶ 4). For example, how the administrative decision not to provide the Plaintiff with legal representation in his defense of the private action pursued by Neumayer constitutes part of the alleged pattern of racial discrimination against the Plaintiff also eludes the Court. *Id.* Simply stated, in this case, while the behavior of Plaintiff's supervisor (Neumayer) was, as alleged, at best base, it does not rise to the level necessary to establish a hostile work envi-

---

7. Although there are additional assertions in the Defendant's Request for Admissions that can be considered as admitted for the reasons discussed in note 6, they are argumentative in nature and not necessary to the Court's holding.

ronment under Title VII. *See Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 754 (4th Cir.1996), *cert. denied*, 519 U.S. 818, 117 S.Ct. 70, 136 L.Ed.2d 30 (1996).

By way of contrast, the court in *Spriggs* found that the plaintiff suffered "continuous daily" racial epithets both directly and indirectly, including being called or subjected to hearing the "n" word, "monkey," "dumb monkey," and "black bitch." 242 F.3d at 184–185. The court found that such behavior was not only frequent and severe, but "degrading and humiliating in the extreme." *Id.* at 185. The court held accordingly that such evidence was sufficient "to cause a person of ordinary sensibilities to perceive that the work atmosphere . . . was racially hostile." *Id.* That is not the case here. At its worst, the Plaintiff may have suffered a handful of sometimes clear, at other times obtuse, insults over an extended period (over a year) from one individual in a work environment that was conflicted by their mutual dislike and distrust of each other, but which was not of the nature or scope to fulfill the frequency and severity requirements to support a conclusion that there was a hostile work environment sufficient to support a Title VII action. Even in a case where an employee endured seven years of sexual insults, the court found that the conduct (which is to be measured by essentially the same standard as required in this case) was "temporally diffuse [and] ambiguous." *Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d at 753. Indeed, in *Hopkins*, the employee's supervisor "bumped into him, positioned a magnifying glass over his crotch, flipped his tie over to see its label, gave him a congratulatory kiss in the receiving line at Hopkins' wedding, and stared at him in the bathroom." *Id.* As in *Hopkins*, the Plaintiff has demonstrated that his supervisor's conduct "was undoubtedly tasteless," but it was not " 'of the type that would interfere with a reasonable person's work performance . . . to the extent required by Title VII.' " *Id.* at 753–54 quoting *Morgan v. Massachusetts Gen. Hosp.*, 901 F.2d 186, 193 (1st Cir.1990). While the Court would not agree with any argument that the comments attributed to Neumayer were a natural part of a convivial workplace, it cannot conclude that the claim rises to a level actionable under Title VII because the statute "was not designated to create a federal remedy for all offensive language and conduct in the workplace." *Id.* at 754.[8] Therefore, as a matter of law, Plaintiff's complaints, taken as true for purposes of the motion, cannot constitute a hostile work environment sufficient to sustain a Title VII action. *See id.* (holding that where a plaintiff is unable to allege severity or pervasiveness, she has failed to establish her *prima facie* case and thus it is unnecessary to consider the matter further).

### Retaliation

■■ The Plaintiff alleges that he suffered adverse employment action in the form of a transfer of his position to a smaller, less desirable location in retaliation for his having engaged in the protected activity of pursuing a grievance concerning his complaints of racial discrimination. (Pl.'s Mem. (Taylor Aff. ¶¶ 20–22)).[9] Title VII prohibits an em-

---

8. The court in *Hopkins* cites a number of other decisions in which it has affirmed summary relief that involved factual circumstances at least as egregious as here.

9. Although the Plaintiff also filed an EEOC complaint, he did not do so until after the transfer and therefore that event cannot be considered to be the protected activity engaged in that gives rise to the cause of action in this case. (Def.'s Mem., Encl. VI; Court Ex. 3 (Rogers Dep.) at 6–7).

ployer from taking adverse employment action in retaliation for the employee's complaint about an unlawful employment practice. *Hopkins v. Baltimore Gas & Elec. Co.,* 77 F.3d at 754–755. To survive summary judgment, however, a plaintiff must first establish a *prima facie* case by showing that he (1) engaged in a protected activity; (2) the employer took adverse employment action against him; and (3) that there is a sufficient causal connection existing between the protected activity and the adverse action. *Karpel v. Inova Health Sys. Serv.,* 134 F.3d 1222, 1228 (4th Cir.1998).[10] Even assuming, as conceded by the Defendant for purposes of argument, that the Plaintiff engaged in protected activity in the pursuit of his grievance and that the issue of whether there is a sufficient causal connection between the activity and the adverse action (not conceded by the Defendant) is typically a genuine issue of disputed fact that must be resolved by the factfinder, there is insufficient evidence in this case as a matter of law to even establish a *prima facie* showing that the employer took adverse employment action against the Plaintiff.[11]

Whether an employment action must involve an "ultimate" act related to "hiring, granting leave, discharging, promoting, and compensating" to constitute actionable adverse action under Title VII has been resolved in this circuit in favor of a more expansive definition:

Adverse employment action includes any retaliatory act or harassment if, but only if, that act or harassment results in an adverse effect on the "terms, conditions or benefits" of employment.

*Von Gunten v. Maryland,* 243 F.3d 858, 866 (4th Cir.2001) (quoting *Munday v. Waste Mgmt. of North America, Inc.,* 126 F.3d 239, 243 (4th Cir.1997)).

However, even if a transfer could be considered as actionable in at least potentially affecting "terms, conditions, or benefits" of employment, the transfer that occurred in this case cannot qualify. *See Harris v. General Motors Powertrain,* 166 F.3d 1209, 1999 WL 7865, at *4 (4th Cir.1999), *cert. denied,* 526 U.S. 1145, 119 S.Ct. 2020, 143 L.Ed.2d 1032 (1999) ("mere inconvenience and alteration of job responsibilities" not enough to constitute an adverse action for purposes of establishing a Title VII violation). The Plaintiff maintained the same title (Treatment Program Specialist) with comparable, if not identical job responsibilities; he continued at the same salary level; and although his transfer to a smaller facility undoubtedly resulted in a corresponding reduction in the scope of his responsibilities such as the number of subordinates he was to supervise, such a consequence is hardly sufficient to constitute adverse action under any reasonable interpretation of "terms or conditions" of employment. *See Peterson v. West,* Nos. 17 Fed.Appx. 199, 2001 WL 1010424, at *2 (4th Cir.2001) (change in job duties not sufficient to show an adverse employment action where employee's title, level, benefits, and salary remained the same); *Johnson v. Quin Rivers Agency for Communi-*

---

**10.** *If* the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to offer a legitimate, non-discriminatory explanation for the adverse action that was taken and the plaintiff then has the opportunity to establish that the explanation was merely pretextual. *Karpel,* 134 F.3d at 1229. However, it is not necessary for this analysis to proceed beyond the issue of whether this Plaintiff has established a *prima facie* showing as to the necessary element of an adverse action having been taken in the first instance.

**11.** The Court nevertheless also discusses the necessary causal connection element *infra* in light of the Plaintiff's admission and corroborative evidence relevant to that issue.

*ty Action, Inc.,* 140 F.Supp.2d 657, 664 (E.D.Va.2001) (former employee failed to establish that her transfer to another office was adverse employment action where her title remained the same and she received no reduction in salary or benefits). Surely the adverse consequences confronted by the plaintiff in *Von Gunten* were comparable to what the Plaintiff allegedly endured and that plaintiff did not prevail.[12] Furthermore, although it is logical, as asserted by the Plaintiff, that his chances for advancement (including salary) may have been diminished by being transferred to a smaller facility, such a potential is too speculative to be considered and is therefore nothing more than an unsupported conclusory assertion that must be discarded. Court Ex. 1 (Taylor Dep.) at 40–42. *See also Von Gunten,* 243 F.3d at 868.

Finally, if a plaintiff is unable to make a *prima facie* showing that an *actionable,* adverse employment action occurred, then, by definition, the required casual connection between the protected activity and any alleged adverse action cannot be established. Moreover, the Plaintiff here has, albeit by default, admitted that his transfer was *not* due to impermissible reason, thereby precluding the claim of retaliation. (Findings ¶ 12). At the same time, there is evidence to support the same conclusion, although it may not be sufficient without the Plaintiff's admission to render the issue as undisputed fact so as to allow for dispositive relief on summary judgment. Nevertheless, for further justification in considering the Plaintiff's admission, it is worthy to note the undisputed fact that another individual—not the allegedly offending supervisor—made the decision to transfer the Plaintiff without being asked to do so by the supervisor, and he (Rogers) was unaware at the time of any of the subject comments save one for which he understood there was an unsatisfactory but nonetheless non-racial explanation. (Findings ¶¶ 5–9; Court Ex. 3 (Rogers Dep.) At 16, 23, 42, 49). Such evidence (that although the official who effected the Plaintiff's transfer was aware at the time that the Plaintiff had filed a grievance that included allegations of racial discrimination, he was not aware of the multiple statements and actions now alleged) is persuasive evidence to support the official's explanation that the transfer was made for legitimate non-discriminatory reasons and that, accordingly, there could not be a causal relationship between the protected activity and supposed adverse action. (Court Ex. 3 (Rogers Dep.) at 6–8).[13]

### Conclusion

For the reasons stated, the Defendant's Motion for Summary Judgment is GRANTED and all remaining motions are DENIED as moot.[14]

An appropriate Order shall issue.

### *ORDER*

This matter is before the Court on the Defendant's motion for summary judgment

---

12. The plaintiff in *Von Gunten,* in addition to other circumstances, lost the use of a state vehicle for use in her position that involved travel, was reassigned to a different location that she alleged precluded her from advancement, and allegedly incurred unprecedented "hyper-scrutinizing" by superiors.

13. Such a conclusion is even more compelling given the Plaintiff's own opinion that the transferring official was *not* racially-motivated. (Court Ex. 1 (Taylor Dep.) at 19).

14. The Defendant has filed a motion to strike from the record the affidavit of Assistant Warden William Crenshaw that was submitted in support of the Plaintiff's response to the Defendant's motion for summary judgment. Although the Court is troubled by the circumstances under which the affidavit was obtained as represented by defense counsel in his motion, the contents of the affidavit do not impact on the Court's analysis of the relevant issues in any event.

pursuant to Fed.R.Civ.P. 56. For the reasons set forth in the accompanying Memorandum Opinion, the motion is hereby GRANTED and the case is DISMISSED with any remaining motions DENIED as moot.

Let the Clerk forward a copy of this Order and the accompanying Memorandum Opinion to all counsel of record.

It is so ORDERED.